IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| BRENDA L. HADJIAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 07-00350-CV-W-NKL-SSA |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Plaintiff Brenda Lee Hadjian challenges the Social Security Commissioner's denial of disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.* [Doc. # 3]. Specifically, Hadjian asserts that the Administrative Law Judge (ALJ) failed to consider every medical opinion or the observations of third parties in determining her residual functional capacity. Having jurisdiction under 42 U.S.C. § 405(g), the Court remands this case to the Commissioner for further consideration consistent with this Order.

**I.     Factual Background**

The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary.[1] In her application with the SSA, Hadjian alleged that she became disabled on July 2, 2002, at age 35. She states that she was five feet,

---

[1] Portions of the parties' briefs are adopted without quotation designated.

1

four inches tall and weighed 290 pounds. Her alleged impairments included depression, degenerative disc disease, and fibromyalgia. Hadjian completed high school. She previously worked as an animal control officer, data entry clerk, secretary, gate clerk and custodian.

In her opinion, the ALJ found Hadjian had the following severe impairments:

> lumbar spine pain also diagnosed as lumbalgia, right shoulder pain, cervicalgia, Raynaud's phenomenon status post frostbite injury at work in 1999, morbid obesity, depression/major depression, borderline personality disorder diagnosed on only one occasion and history of substance abuse in the past.

In determining Hadjian's residual functional capacity (RFC), the ALJ stated:

> Claimant has the following RFC: can lift 20 pounds occasionally and 10 pounds frequently, can occasionally push/pull overhead and reach with the dominant right arm, no work on ladders, ropes, or scaffolds, can occasionally use ramps or stairs, stoop, kneel, crouch, or crawl, cannot work at unprotected heights, must avoid extreme temperatures, needs a sit/stand option, and has no restriction in her ability to stand, walk, sit, or use foot controls.

Hadjian asserts that the ALJ did not consider all the medical opinions in analyzing her RFC, including the following:

### A. State Agency Reports

Lynne C. Logan, on behalf of the state agency, completed an Administration Physical Residual Functional Capacity Assessment and concluded Hadjian was limited to:

> Occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk (with normal breaks) for a total of at least 2 hours in an 8-hour workday, sit (with normal breaks) for a total of about 6 hours in an 8-hour workday.

In the explanation portion of the Assessment, Logan noted:

> Has a hx of generalized pain for last 7 yrs. Has tried injections in the past and were not helpful, did have 7 sessions of PT with some slight decreased [sic]

2

in pain. Referred to neurologist with current MRI of C-spine 5/14/04 mild bulge at C5-6; MRI of L-spine 5/14/04 moderate DDD @ l4-5 and L5-S1 with lower disc showing an actual protrusion which may impringe [sic] on the left S1 root. Normal EMG and NCS 7/7/04. Medications given without significant pain relief. 7/7/04 given epidural injection. 7/14/04 declined more injections.

John Keough, MA for the state agency, conducted a psychological consultation on Hadjian on September 20, 2004. He explained:

> Ms. Hadjian's [sic] appears to be experiencing a mild to moderate level of impairment with regard to her ability in sustaining concentration, being persistent in tasks, and maintaining an adequate pace in productive activity necessary to be gainfully employed working a 40-hour week for a duration of at least 12 months. Ms. Hadjian's ability to adapt to the environment of others appears to be moderately limited by personality deficits and a mood disorder.

J. Scott Morrison, M.D., state agency reviewing physician, noted Hadjian had the following moderate limitations:

6.   The ability to maintain attention and concentration for extended periods.

9.   The ability to work in coordination with or proximity to others without being distracted by them.

12.  The ability to interact appropriately with the general public.

14.  The ability to accept instructions and respond appropriately to criticism from supervisors.

15.  The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

16.  The ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.

17.  The ability to respond appropriately to changes in the work setting.

3

Dr. Morrison added, "mild to moderate impairment as to concentration, persistence, and pace. Moderate impairment (due to her personality disorder primarily) in adapting to her environment."

### B. Additional Medical Opinions

On April 9, 2004, Paramal Purohit, M.D., an examining psychiatrist, concluded that Hadjian had "Bipolar mood disorder type II, Personality disorder, . . . GAF of 50-55."

On November 28, 2005, Robert G. Urie, Ph.D., and licensed clinical psychologist, conducted a psychological assessment of Hadjian regarding her continued eligibility for medical benefits, at the request of the Clay County, Missouri DFS. He stated:

> Little has changed in Brenda's life since her last assessment in April of 2003. . . . Brenda appears to be rather hopeless now in her desire to return too [sic] work since no medication or treatments have yet assisted her physically or emotionally. Her anger, irritation, frustration, anguish, and agitated sadness are readily perceived in her demeanor. It appears that her overall functioning has deteriorated since 2003. Her history of abuse likely contributes to her anger which appears to have exacerbated rather than reduced over the years.
>
> DIAGNOSTIC IMPRESSION:
>
> 293.83    Mood Disorder (depression and anger) associated primarily with pain and life stressors
>
> GAF:    48

### C. Third Party Statements

On September 30, 2004, Mark Bronson, Hadjian's estranged spouse, stated the following:

> [She] makes attempt at performing domestic duties as pain and Dr. Appts allow . . . difficulty in dressing self, showers only due to pain, stiffness in limbs limits mobility . . . pain limits amount of time standing, physical

4

> assistance in [sic] required on a regular basis . . . pain affects mood, no longer participate in social activities, emotionally challenged . . . mood swings vary with pain and depression . . . .
>
> Since I have known Brenda I have observed a major deterioration in mobility as well as a positive outlook on life due to the inability to participate in average family type activities as well as being able to secure gainful employment. This has been an extreme change since I have watched this once bright positive, outgoing person to one that has difficulty getting out of bed due to pain.

Bronson also noted Hadjian needed help or reminders taking medicine, usually verbal reminders on a daily and weekly basis.

On August 11, 2004, Shelly Jones, community support worker, filled out a Function Report Adult-Third Party, noting that Hadjian had "problems in physical activities due to back pain and swelling in legs."

## II.  Discussion

In reviewing the Commissioner's denial of benefits, this Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007). "[T]he court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." *Jackson v. Bowen*, 873 F.2d 1111, 1113 (8th Cir. 1989) (quoting *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)). The Court will uphold the denial of benefits so long as the ALJ's decision falls within the available "zone of choices." *See Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). "An ALJ's decision is not outside the 'zone of choice' simply because we

5

might have reached a different conclusion had we been the initial finder of fact." *Id.* (quoting *Nicola*, 480 F.3d at 886); *see also Nguyen v. Chater*, 75 F.3d 429, 431 (8th Cir. 1996) ("If, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the decision of the Commissioner.").

### A. State Agency Reports

First, Hadjian argues that the ALJ failed to take into consideration the state agency reports by Lynne C. Logan and J. Scott Morrison, M.D. The Administration has issued a ruling regarding the role of state agency reports:

> Because State agency medical and psychological consultants and other program physicians and psychologist are experts in the Social Security disability programs, the rules in 20 CFR 404.1527(f) and 416.927(f) require administrative law judges and the Appeals Council to consider their findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians and psychologists. Administrative law judges and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions.

S.S.R. 96-6P.

The Commissioner acknowledges that the ALJ "did not cite to the findings offered by the state agency examiners Lynn [sic] C. Logan and Dr. Morrison." The Commissioner states that the reason the case was before the ALJ was because Hadjian disagreed with the state agency's findings, implying Hadjian cannot now argue the ALJ did not consider those findings. In addition, the Commissioner notes that neither Ms. Logan or Dr. Morrison examined Hadjian. Neither of these reasons explain, however, why the ALJ should be

6

allowed to ignore her duty, as outlined in S.S.R. 96-6P, to consider these findings of facts and explain the weight given to the opinions in her decision. As such, the Court remands the case back to Defendant and instructs the ALJ to consider the opinions of Ms. Logan and Dr. Morrison, as required by S.S.R. 96-6P.

**B.     Other Medical Opinions**

*1.      John Keough, Dr. Purohit and Dr. Urie.*

Next, Hadjian argues that the ALJ failed to consider the medical opinions of John Keough, Dr. Purohit and Dr. Urie. The Commissioner admits that the ALJ's opinion does not specifically mention Keough or Dr. Purohit by name (the opinion does mention Dr. Urie), but suggests that the ALJ did take their opinions into consideration by way of the testimony of Hershel Goron, the medical expert. Because Dr. Goron took these other medical opinions into consideration in forming his own opinions, and because the ALJ, "[b]ased upon an independent review of the medical evidence," found Dr. Goron's conclusions to be supported by that evidence, the other medical opinions were taken into account.

In determining whether impairments amount to a disability, "[t]he ALJ should consider 'all the evidence in the record' in determining RFC, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir. 2004) (citations omitted). Under the Administration's regulations, the ALJ "will evaluate every medical opinion [she] receive[s]" according to several factors. 20 C.F.R. §§ 404.1527(d), 416.927(d); *cf. Strongson v. Barnhart*, 361 F.3d 1066, 1071 (8th Cir. 2004) ("It is improper for the ALJ to ignore

7

opinion evidence from a therapist that is in the record and provides unique uncontroverted evidence of an impairment." (citing *Shontos v. Barnhart*, 328 F.3d 418, 426-27 (8th Cir. 2003) (noting that an ALJ should not ignore the opinions of "other" non-physician medical sources, including therapists, but should consider them under 20 C.F.R. § 404.1513(d)(1) to help assess the severity of an impairment))). "[I]t is well settled that it is the ALJ's duty to develop the record fully and fairly. This duty includes the responsibility of ensuring that the record includes evidence from a treating physician, or at least an examining physician, addressing the particular impairments at issue." *Strongson*, 361 F.3d at 1071-72.

The Commissioner maintains that the ALJ is not required to discuss every piece of evidence submitted, as long as she developed the record fully and fairly. *See Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); *Miller v. Shalala*, 8 F.3d 611, 613 (8th Cir. 1993) (citing *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987)). "An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Black*, 143 F.3d at 386 (citation omitted). "We do not require the ALJ to discuss every piece of evidence, but only to articulate his rationale sufficiently to allow meaningful review. We require the ALJ to discuss specific evidence only if that evidence goes uncontradicted." *Walker*, 834 F.2d at 643. In *Walker*, the Seventh Circuit held that the ALJ could rationally rely on medical evidence rather than the vocational evidence; therefore, he was not required to discuss the reports of two non-physicians. *See id*.

However, Dr. Purohit and Dr. Urie actually examined Hadjian, unlike Dr. Goron who simply reviewed the medical records. Other courts, facing a situation where the ALJ rejects

8

a treating physician's opinion over that of a consulting physician, have held the ALJ must analyze her reasoning under 20 C.F.R. § 404.1527(d)(2). *See, e.g., Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000) ("The Court concludes that, absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)."). Here, Hadjian does not allege that either Dr. Purohit or Dr. Urie were treating physicians, but she does cite an unpublished Tenth Circuit case that explains:

> "[T]he opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." *Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003). Nevertheless, "[e]ven though Dr. [Trinidad] was not a treating physician, the ALJ was still required to consider his opinion, . . . and to provide specific, legitimate reasons for rejecting it." *Id.* at 764 (citing § 416.927(d) and SSR 96-5P, 1996 WL 374183, at *1). Again, the ALJ's failure to give any consideration to Dr. Trinidad's medical evidence, to evaluate his evidence by applying the relevant factors to be used in weighing a medical opinion, and to give any specific legitimate reason for rejecting his opinion was contrary to the requirements of the governing regulations. *See* §§ 404.1527(d) and 416.927(d).

*Victory v. Barnhart*, 121 Fed. App'x 819, 825 (10th Cir. 2005).

It is clear from the record that Dr. Goron, the medical expert, did take into account the evaluations of Keough, Dr. Purohit and Dr. Urie in forming his own opinion, specifically naming them in his hearing testimony. It is also clear that the ALJ's opinion specifically notes Dr. Goron's opinion regarding Dr. Urie's GAF assessment. In her findings, the ALJ notes Keough's diagnosis of borderline personality disorder without mentioning him by name. Finally, the ALJ states that she conducted an independent review of the evidence,

9

finding that Dr. Goron's conclusions were supported by the evidence. So, the question becomes whether the evidence above is enough to show that the ALJ considered the opinions of the examining physicians, separate from Dr. Goron's analysis and despite failing to mention them in her opinion. In this case, the Court believes the ALJ did not err because, by stating that she had independently reviewed the medical record and believed that Dr. Goron's analysis was supported by the evidence, the ALJ gave specific reasons supporting her conclusion. "We find that, in focusing on certain portions of the medical records that were consistent with his findings, the ALJ was not ignoring the totality of the record, but rather was properly giving specific reasons to support his conclusions." *Wheeler v. Apfel*, 224 F.3d 891, 896 (8th Cir. 2000). However, because this case is being remanded, the ALJ is ordered to specifically discuss the evaluations of Keough, Dr. Purohit and Dr. Urie and explain what weight, if any, should be given to them.

### 2. *Dr. Ira Fishman*

Hadjian asserts that Dr. Ira Fishman did not find that Hadjian had tested positive for Waddell's signs, and that he was misquoted by Dr. Goron and the ALJ. The ALJ stated in her opinion that "[Dr. Goron] testified that when examined by Dr. Fishman, she had decreased range of motion of the lumbar spine but Waddell's signs for distraction and tenderness were positive, which the undersigned notes are signs of exaggeration (Ex 1F/7-10)." Unfortunately, the transcript of Dr. Goron's testimony indicates part of it was inaudible: "Range of motion of the lumbar spine was described as being decreased by Dr.

10

Fishman at 1F, pages seven through ten. [INAUDIBLE] scientific exaggeration and these were noted by Dr. Fishman at Exhibit 1F." In his report, Dr. Fishman concluded:

> Ms. Hadjian's physical examination today indicated only very minor residuals of a lumbosacral strain. There was no evidence on her physical examination alone of an actual lumbar radiculopathy. I am therefore uncertain what has perpetuated this degree of lower back pain, however, I would recommend an MRI scan be performed of the lumbar spine in order to rule out the possibility of an underlying disc disease that is not apparent on her physical examination alone. If the MRI scan is normal without evidence of significant disc disease, then it can be more accurately stated that Ms. Hadjian is at maximum medical improvement for a lumbosacral strain and is not in need of further physical therapy treatments.

The Commissioner admits that Dr. Fishman's report does not contain the term "Waddell signs." Further, Dr. Fishman's report does not state that he believed Hadjian was exaggerating or that there was any evidence of malingering. *See Hillery v. Met. Life Ins. Co.*, 453 F.3d 1087, 1089 (8th Cir. 2006) (noting Waddell Signs indicate malingering). But, the Commissioner argues that Dr. Fishman did describe some of the clinical tests and responses which comprise Waddell signs, namely references to complaints of severe tenderness even with light compression, and no significant tenderness elicited from compression over the lumbar vertebrae. This is not enough for the ALJ to decide, sua sponte, there are Waddell signs of exaggeration or malingering. Thus, on remand, the ALJ should evaluate Dr. Fishman's report and specifically explain how this scientifically supports any findings of exaggeration.

### C. Third Party Opinions

Finally, Hadjian asserts that the ALJ improperly ignored the statements of third parties supporting her disability claims. The Commissioner acknowledges that the ALJ did not

11

reference (or even discuss) the third-party questionnaires of Mark Bronson or Shelly Jones in her decision, but states that this is inconsequential. In support, the Commissioner cites *Carlson v. Chater*, 74 F.3d 869 (8th Cir. 1996); however, in *Carlson*, the court noted that "although the ALJ did not make a specific credibility finding as to Carlson's husband's testimony, he made an implicit finding after *discussing* the specifics of that testimony." *Id*. at 871 (emphasis added). This is not a situation where the ALJ failed to determine credibility; here, the ALJ did not even discuss Bronson's or Jones's statements. *See Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992) ("While it is preferable that the ALJ delineate the specific credibility determinations for each witness, an 'arguable deficiency in opinion-writing technique' does not require us to set aside an administrative finding when that deficiency has no bearing on the outcome.").

Under *Polaski*, the ALJ "must give full consideration to all of the evidence presented relating to subjective complaints, including . . . observations by third parties . . . ." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). There is no evidence in the ALJ's opinion that she considered these third-party observations. *See Jelinek v. Heckler*, 764 F.2d 507, 510 (8th Cir. 1985) ("In particular, adjudicators are to consider the claimant's prior work record and observations by third parties and physicians concerning" the claimant's daily activities; the duration, frequency and intensity of the pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medication; and functional restrictions). Because these third-party observations, if they are found credible, support Hadjian's alleged disability

12

complaints, and in conjunction with the state agency evaluations, it cannot be said for certain that the deficiency has no bearing on the outcome.

### III. Conclusion

Accordingly, it is hereby

ORDERED that Hadjian's petition [Doc. # 3] is GRANTED IN PART. The decision of the ALJ is REVERSED and the case is REMANDED for further consideration consistent with this Order.

                                       s/ NANETTE K. LAUGHREY
                                       NANETTE K. LAUGHREY
                                       United States District Judge

Dated:    January 8, 2008
Jefferson City, Missouri